UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DWAYNE ANDREWS                                                    CIVIL ACTION

VERSUS

EXXON MOBIL CORPORATION                          NO. 18-01101-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant's **Motion for Summary Judgment (Doc. 34)**. The motion is opposed by Plaintiff. *See* (Doc. 44). For the reasons stated below, Defendant's Motion is **GRANTED**.

I. BACKGROUND

Plaintiff was employed by Defendant from May 2014 until his termination in September 2017. (Doc. 1, ¶ 5). Plaintiff, who is African American, alleges that Defendant discriminated against him on the basis of his race, in violation of 42 U.S.C. § 2000e-2. *Id.* at ¶ 29. Plaintiff contends that, throughout his employment, he was subjected to hostility by his Caucasian coworkers, which went ignored by Defendant, while his own infractions were severely punished. (Doc. 1). He asserts that this environment allegedly led to Plaintiff's placement on "Decision Making Leave" ("DML")[1], a kind of probation, for discriminatory reasons in order to make it

---

[1] DML is usually the last step (before discharge) of ExxonMobil's positive performance management system. (Doc. 34). It is generally taken as the fourth step of corrective action, although it may also be taken as a first step if a single performance incident occurs which is serious enough to warrant such action. (Doc 44-2, at p. 77–83). DML is the final written reminder to an employee about a critical

1

easier to terminate his employment. *Id.*[2] He additionally alleges that he was terminated in retaliation for making reports of harassment and testifying in a deposition for an unrelated race discrimination case brought against Defendant by another African American coworker, in violation of 42 U.S.C. § 2000e-3. *Id.* at ¶ 30.

In 2015 Plaintiff was placed on DML following an incident in which he "became rather emotional and yelled" at a coworker and was sent home. *Id.* at ¶¶ 15–16. Initially, Plaintiff had been recommended for termination on account of his conduct. The recommendation was reduced to DML status after review by a Peer Review Board and the Plaintiff submitted a letter of apology. *Id.* at ¶ 21. He was also subsequently moved to another shift. *Id.* at ¶¶ 23–24.

After the move, Plaintiff claims he experienced a much better work atmosphere and successful job performance. *Id.* Following the incident, Plaintiff alleges no further hostile, negative, or discriminatory interactions. However, four months prior to his termination, Plaintiff testified in a deposition in another lawsuit where he "honestly described his own experience at Exxon, stating specifically that he had been treated differently from his Caucasian coworkers." *Id.* at ¶¶ 25–26. Approximately four months after testifying, Plaintiff was terminated. *Id.* at ¶ 27. Defendant alleges that Plaintiff was terminated not in retaliation for testifying but, rather, for a safety and performance incident which occurred while he was on DML. (Doc. 13, at ¶ 27).

---

performance issue. The DML remains active for 24 months. If the employee corrects the performance issue, the DML and any associated reminders are deactivated, and the employee starts with a clean slate. If, however, the employee experiences additional performance issues, the employee will be progressed to the Peer Review Board Evaluation step and potentially terminated. *Id.*

[2] *See also* Doc. 44 at p. 9. ("Andrews asserts only *one* (1) claim of discrimination: that he was placed on DML for discriminatory reasons, which led to (was the legal cause of) his termination.")

Plaintiff filed his EEOC charge on October 28, 2017. (Doc. 34-2 at p. 12).

Now, Defendant moves for summary judgment, alleging that Plaintiff's discrimination claim is time-barred and that his termination was based on a legitimate, nonretaliatory reason.

## II. LEGAL STANDARD

Summary judgment is proper if Defendant shows that there is no genuine dispute as to Plaintiff's claims for economic damages by application of the doctrine of judicial estoppel, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding whether Defendant has made such showing, the Court views facts and draws reasonable inferences in Plaintiff's favor. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

## III. DISCUSSION

### a. Whether Plaintiff's Discrimination Claim is Time-Barred

Title VII prohibits discrimination by employers "against any individual. . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish a case for race discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) he was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).

Once a plaintiff establishes a *prima facie* case under these factors, the burden

shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. *Id.* at 557. After a satisfactory non-discriminatory reason is offered, the burden shifts once more to the plaintiff to demonstrate that the defendant's proffered reason is a mere pretext for racial animus. *Id.*

In addition, to recover for a discriminatory act under Title VII, a plaintiff must file an EEOC charge about the related act within the statutory period.[3] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Defendant argues that most of the encounters with coworkers that Plaintiff relies on to establish a *prima facie* case of discrimination are time-barred and therefore must be dismissed as a matter of law. (Doc. 34-1, at p. 16).

Plaintiff filed his EEOC charge on October 28, 2017 (Doc. 34-2, at p. 12; Doc. 34-3, at p. 436). Three hundred days preceding that date is January 1, 2017. As such, Plaintiff cannot sue for any acts of discrimination that occurred prior to 2017. *See* 42 U.S.C. § 2000e-5(e)(1). The Court has been clear that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. However, the prior acts may be used "as background evidence in support of a timely claim." *Id.*

A limited exception to the 300-day rule occurs where Plaintiff alleges a hostile work environment. The Court has held that a hostile work environment claim is a series of separate acts which comprise a single "hostile employment practice" for the

---

[3] In Louisiana, a Title VII plaintiff must file an EEOC charge within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 n.7 (5th Cir. 2006).

4

purposes of filing a timely EEOC charge under 42 U.S.C. § 2000e-5(e)(1). *Id.* at 117. Where a hostile work environment claim is asserted, Plaintiff may reach beyond the statutory limitation to establish repeating conduct, so long as at least one act contributing to the claim occurs within the filing period. *See Id.; Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017).

Under the continuing violations doctrine, a plaintiff can sue for otherwise time-barred acts of discrimination if the plaintiff can show "that the discrimination manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). The continuing violations doctrine is limited in three ways: "(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'" *Heath*, 850 F.3d, at 738.

Despite the fact that Plaintiff's Complaint and Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") outline numerous events occurring throughout Plaintiff's employment that Plaintiff speculates were racially motivated, Plaintiff explicitly states that he "only asserts ***one*** (1) claim of discrimination" and that claim is that he was put on DML in 2015 "for discriminatory reasons, which led to. . . his termination." (Doc. 44, at p. 9). Plaintiff also stated that

5

he "has not asserted claims for. . . 'Harassment/Hostile Work Environment,'" and therefore, "to the extent that the [C]omplaint is found to set forth [a] separate claim[] for hostile work environment. . . Plaintiff hereby withdraws [it]." (Doc. 44, at p. 20).

Because Plaintiff has expressly withdrawn the claims which would require the continuing violations doctrine, the Court will not examine those claims. *Smith v. U.S.*, 328 F.3d 760, 770 ("A party's concession of an issue means the issue is waived and may not be reviewed."). As such, Plaintiff's discrimination claim is time-barred. The allegedly discriminatory act or acts, whether described as Plaintiff being placed on DML in 2015 or the processes which led to the DML determination, all fall outside the statutory period. Although Plaintiff argues that had he not been placed on DML in 2015, he would not have been terminated in 2017—an act which is not time-barred—the Supreme Court has been clear that an unlawful "practice" occurs on the day that an action happens, regardless of whether the action has further connection to other acts. *See Morgan* 536 U.S. at 111. If Plaintiff is not pursuing a hostile work environment claim, then all acts occurring before January 1, 2017 may only be used as "background evidence in support of a timely claim" because they are outside the statutory limit. *Id.* at 113.

Even when used as background evidence, Defendant satisfies its burden of demonstrating a non-discriminatory motive for both the DML determination and Plaintiff's later termination. As discussed *supra*, Plaintiff was placed on DML status after losing his temper at work and yelling at a coworker. Plaintiff acknowledged that his behavior was "totally unacceptable," (Andrews Deposition at p. 228), but argued

6

that his reaction was a response to experiencing negative treatment from coworkers. He also argued that he "did nothing that no one else hadn't done to [him]" and asserted that he disagreed "with the consistency of the discipline." *Id.* at 229. However, in his deposition he did not attribute such treatment to racial animus.

In addition, while it is true that had Plaintiff not been placed on DML status he likely would not have been terminated, there is no evidence that the DML status was used to make it easier to terminate Plaintiff because of his race. Even before he was placed on DML status, Plaintiff had a history of performance deficiencies.[4] Prior to the terminating offense, Plaintiff had committed a separate safety error while on DML, which he admitted was his fault. (Andrews Deposition, at p. 181). This incident, which occurred in August 2016, was reviewed closely due to Plaintiff's DML status, but Plaintiff was ultimately provided one additional opportunity to improve his work performance rather than be terminated. *Id.* at 185–187. He was also informed that his failure to maintain good performance or behavior within the DML period would result in discharge. *Id.* at 186.

Despite the warning, Plaintiff committed another safety infraction in August 2017 and was terminated. The incident was a lockout tagout ("LOTO") incident. LOTO, according to Plaintiff, is designed to "isolate energy from individuals,

---

[4] Defendant alleges that Plaintiff had difficulty with his work performance prior to the DML decision. His supervisor completed performance and analysis reviews of Plaintiff in February 2015 and June 2015, where Plaintiff was marked as "needs improvement" in multiple categories. He was counseled following a safety incident in March 2015 and given an oral reminder about his performance in June 2015. Plaintiff was involved in other incidents where he failed to properly complete his work in April 2015 and June 2015 but was not counseled following these incidents. As a result of his work performance, his supervisor made the decision not to promote him to the next post and twice did not progress Plaintiff's pay with the other operators with which he was hired. *See* Doc. 34-9, "Hilton Declaration", at ¶ 7–15. Plaintiff does not deny these allegations.

7

people, or the environment, that could result in injury or worse." (Andrews Deposition, p. 79). Plaintiff had been involved in similar incidents before. *See* note 4. Plaintiff relieved a coworker from his shift. According to Plaintiff, the coworker should have flipped a switch on a valve to the "engaged" position but did not do so. (Doc. 40-1, at p. 3). Plaintiff was required to flip the switch back to the "disengaged" position but admits that he did not double-check his coworker's work. *Id.* Therefore, when Plaintiff flipped the switch, the switch was placed into the incorrect position. *Id.* Defendant alleges that Plaintiff was terminated because of this second safety infraction while on DML status. These facts do not demonstrate a pattern of continuing racial discrimination by Defendant but, rather, support Defendant's assertion that Plaintiff's termination was based on a non-discriminatory motive.

### b. Retaliation Claim

Title VII's anti-retaliation provision forbids an employer from taking adverse employment action against an employee because the employee opposed practices made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a). To plead a claim under this provision, an employee must allege that (1) he engaged in activity protected by Title VII; (2) the employer took "materially adverse employment action" against him; and (3) a causal connection between the protected activity and the adverse employment action. *See Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017). The same burden-shifting analysis applies in a retaliation claim. *McCoy*, 492 F.3d, at 557.

Plaintiff argues that the protected activity he engaged in was the act of testifying in a deposition in a race discrimination case and his termination was the

8

"adverse employment action" taken by Defendant. (Doc. 44, at p. 6).[5] To satisfy the third element of the analysis, Plaintiff argues that terminating him a mere four months after participating in a protected activity is sufficient to establish the required causal connection for the purposes of establishing a *prima facie* case. *Id.* at 7. Defendant objects, citing to a decision from the United States Court of Appeals for the Fifth Circuit finding that "a five-month interval between a protected activity and an adverse employment consequence is too long to sustain a *prima facie* claim of causation based solely on temporal proximity." *Ganheart v. Brown*, 740 F. App'x 386, 391 (5th Cir. 2018).

The Court need not decide whether four months is sufficiently close to establish causation, because, like his race discrimination claim, Plaintiff's retaliation claim must fail under the burden-shifting analysis. Defendant's non-discriminatory justification that it fired Plaintiff after he committed two safety errors while still on probationary status satisfies its burden of providing a non-discriminatory reason for Plaintiff's termination.

In his Opposition, Plaintiff disputes the purportedly non-discriminatory explanation by shifting the blame for his mistake in the second incident to another employee. He argues that his only mistake was that he failed to double-check the other employee's work. (Doc. 44, at p. 8). The simple fact that he was on DML and had already committed a previous safety violation does not, according to Plaintiff,

---

[5] Retaliation against an employee for testifying in an investigation, proceeding, or hearing is expressly prohibited by statute. *See* 42 U.S.C. § 2000e-3.

account for the vast discrepancy between his treatment and that of his coworker. *Id.* at 9. He supports this assertion with a conclusory statement that his coworker was not disciplined at all, while he was terminated. *Id.* at 8–9. According to the Defendant, while the coworker was not disciplined, he was in fact counseled following the incident and denied making any error. (Doc. 34-4, at p. 21–22). Regardless of whether the coworker was correct or not, it was the Plaintiff who committed a safety violation by either not checking the previous employee's work or by mistakenly engaging the switch in the wrong direction. *Id.* Further, the fact that Plaintiff was on DML status and the coworker was not is an important distinction. Because of his DML status, Plaintiff, as was previously discussed, was already on notice that he would be terminated if any further infractions occurred.

During the pretext stage of analysis, the Court does not determine whether an employer's nondiscriminatory reasoning was fair, but whether it was the real reason for a plaintiff's termination. *See Harville v. City of Houston, Mississippi*, 945 F.3d 870, 879 (5th Cir. 2019) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). Merely disagreeing with Defendant's assessment of his conduct or punishment does not rise to a Title VII violation. *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 275 (5th Cir. 2006) (per curiam) ("Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus."). Plaintiff has offered no evidence that Plaintiff's safety infraction was not the real reason for his termination.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Doc. 34)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.

A final judgment shall issue in accordance with Federal Rule of Civil Procedure 58.

Baton Rouge, Louisiana, this 17th day of November, 2020

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**